UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEONARD D. GRICE,

    Petitioner,

vs.                            Case No.    3:16-cv-1252-J-32JBT
                                                    3:15-cr-33-J-32JBT

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

This case is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1)[1] and Supporting Memorandum (Civ. Doc. 2), as well as his Motion to Appoint Counsel (Civ. Doc. 9) and Motion to Expedite (Civ. Doc. 12). In brief, Petitioner claims he was incorrectly sentenced as a career offender under the United States Sentencing Guidelines and that counsel failed to file a requested appeal. The United States has responded. (Civ. Doc. 5, Response). On March 4, 2019, the Court directed Petitioner's former public defenders and the prosecutor to expand the record with affidavits and relevant records concerning Petitioner's claim that trial counsel did not file a requested appeal. (Civ. Doc. 13, Order to Expand the Record). Each attorney has responded to the Order (Civ. Docs. 15, 16,

---

[1] Citations to the record in the underlying criminal case, United States vs. Leonard Grice, No. 3:15-cr-33-J-32JBT, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-1252-J-32JBT, will be denoted "Civ. Doc. __."

1

17), and Petitioner has responded to their affidavits (Civ. Docs. 18, 21). Thus, the matter is ripe for a decision.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motion. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's § 2255 Motion is due to be denied.

I. **Background**

On March 11, 2015, a federal grand jury charged Petitioner with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1, Indictment). Three months later, Petitioner pled guilty to the charge pursuant to a written Plea Agreement. (Crim. Doc. 18, Plea Agreement); (see also Crim. Doc. 40, Plea Transcript). In doing so, Petitioner admitted that he knowingly possessed a firearm after having been convicted of six felonies. (Crim. Doc. 18 at 19-20; Crim. Doc. 40 at 20-23). Petitioner also agreed to waive the right to appeal his sentence. (Crim. Doc. 18 at 14; Crim. Doc. 40 at 17-18). When questioned under oath about the appeal waiver, Petitioner acknowledged that he understood the waiver and accepted it "freely and voluntarily." (Crim. Doc. 40 at 18). The Magistrate Judge who presided over the change-of-plea hearing recommended that the Court accept the guilty plea as "knowledgeable and voluntary" (Crim. Doc. 19), and the Court did so (Crim. Doc. 21).

According to the Presentence Investigation Report (PSR), Petitioner's base offense level was 24 under U.S.S.G. § 2K2.1(a)(2) because he committed the offense after having been convicted of two controlled substance offenses: (1) a 2005 conviction in federal court for possession of crack cocaine with intent to distribute, and (2) a 2000 conviction in a Florida court for the sale of cocaine. PSR at ¶ 16; see also id. at ¶¶ 39, 51. Petitioner received a three-level reduction under §§ 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 21. Id. at ¶¶ 23-25. Petitioner's Criminal History Category was VI based on having 15 criminal history points. Id. at ¶¶ 52-54. As a result, Petitioner's advisory sentencing range under the Guidelines was between 77 months and 96 months in prison. Id. at ¶ 114.

At the sentencing hearing, the Court adopted the PSR's Guidelines calculation without objection from either party. (Crim. Doc. 41, Sentencing Transcript at 6). Both the United States and Petitioner's counsel asked for a sentence at the low end of the Guidelines range, or 77 months. (Id. at 9, 14). All sides agreed that Petitioner had a serious criminal record; indeed, the Court observed that Petitioner had 25 convictions. (Id. at 18). However, Petitioner had attempted to assist law enforcement authorities by coming forward with information about other criminal activities. (See id. at 6-10, 11-12). Thus, in the end, the Court adopted the parties' recommendation and sentenced Petitioner to a term of 77 months in prison, followed by a three-year term of supervised release. (Id. at 20-21). Neither party objected to the sentence. (Id. at 22).

The Court entered judgment on December 18, 2015. (Crim. Doc. 30, Judgment). Petitioner did not file a notice of appeal thereafter. Petitioner timely filed the § 2255

3

Motion roughly nine months later.

## II. Arguments

Petitioner raises four grounds in the § 2255 Motion, but they can be reduced to two issues. First, in Grounds One through Three, Petitioner argues that the Court erred by enhancing his Sentencing Guidelines range under the career offender provision. (Civ. Doc. 1 at 4-6; see also Civ. Doc. 2). Petitioner contends he is "actually innocent" of the career offender enhancement because he does not have two prior convictions that qualify as a "controlled substance offense." Petitioner also argues that the Court erred by "look[ing] beyond the authorized documents … to increase the Petitioner's Sentencing Guidelines," and that increasing his Guidelines range violated his rights under the Sixth Amendment. (Civ. Doc. 1 at 5-6).

Contrary to these allegations, Petitioner was not in fact sentenced as a career offender. Rather, his base offense level was set at 24 under U.S.S.G. § 2K2.1(a)(2) because he had two prior convictions for a controlled substance offense. But § 2K2.1 defines the term "controlled substance offense" by reference to the career offender provision, § 4B1.2(b). U.S.S.G. § 2K2.1, Application Note 1. Thus, while Petitioner was not sentenced under the career offender guideline, the Court construes Petitioner as challenging the determination of his base offense level under § 2K2.1(a)(2).

Second, in Ground Four, Petitioner claims that counsel gave ineffective assistance by failing to file a notice of appeal "after being directed to do so by the Petitioner." (Civ. Doc. 1 at 8). Petitioner argues that an attorney "is per se ineffective when he fails to file a direct appeal after being directed to do so by his client." (Id.).

4

In its Response, the United States argues that Petitioner's claims are barred by a collateral review waiver in the Plea Agreement. (Civ. Doc. 5 at 3-7).[2] The United States also contends that Petitioner's claims lack merit. (Id. at 7-14). Specifically, as to Petitioner's claim that counsel was ineffective for not filing a notice of appeal, the United States argues that the record contradicts the claim because Petitioner waived the right to appeal his sentence, Petitioner received a sentence at the low end of the Guidelines range, and Petitioner waited nearly nine months to file the § 2255 Motion, despite the Court advising him that he would waive the right to appeal if he did not file a notice of appeal within 14 days of sentencing. (Id. at 11-14).

## III. Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86

---

[2] The sentence-appeal waiver in Petitioner's Plea Agreement does not clearly bar Petitioner from collaterally attacking his conviction and sentence. (See Crim. Doc. 18 at 14). Rather, the appeal waiver appears to be a waiver of the right to directly appeal the sentence. Accordingly, the Court declines to find that the Plea Agreement includes a collateral review waiver that bars Petitioner's claims.

5

(1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim

because failure to satisfy the prejudice component is dispositive.").

### A. Grounds One through Three: Whether the Court erroneously increased Petitioner's Guidelines range

Petitioner claims in Grounds One through Three that the Court erred in sentencing him as a career offender under the Guidelines. Although Petitioner was not sentenced under the career offender provision, the Court construes the claim as challenging the enhancement of his base offense level under U.S.S.G. § 2K2.1(a)(2). Petitioner argues that he does not have two prior convictions that qualify as a "controlled substance offense" and that the Court erred by "look[ing] beyond the authorized documents of a prior state conviction." (Civ. Doc. 1 at 5). Petitioner also claims that increasing his Guidelines range violated his rights under the Sixth Amendment. (Civ. Doc. 1 at 6).

Grounds One through Three do not warrant relief because Guidelines errors are not cognizable on collateral review. "Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). When a prisoner claims that his "sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack," 28 U.S.C. § 2255(a), a court lacks authority to grant relief "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice,'" Spencer, 773 F.3d at 1138 (quoting Addonizio, 442 U.S. at 185). A miscarriage of justice occurs where a defendant is actually innocent, or where a defendant's sentence is "unlawful," such as when the defendant and his counsel are denied the right to be present at the sentencing hearing, or where

the sentence exceeds the statutory maximum. See id. at 1138-39. Additionally, a sentencing error qualifies as a "fundamental defect" where "a prior conviction used to enhance [the defendant's] sentence has been vacated." Id. at 1139. However, lesser errors, such as a misapplication of the sentencing guidelines, do not authorize relief under § 2255. Id. at 1140 ("A misapplication of advisory sentencing guidelines ... does not violate an 'ancient' right, nor does it raise constitutional concerns."). "When a federal prisoner, sentenced below the statutory maximum, complains of a sentencing error and does not prove either actual innocence of his crime or the vacatur of a prior conviction, the prisoner cannot satisfy the demanding standard that a sentencing error resulted in a complete miscarriage of justice." Id. at 1139.

Petitioner's argument that the Court incorrectly enhanced his Guidelines range is a non-constitutional issue that does not create a basis for relief under § 2255. The claim does not implicate a miscarriage of justice or the legality of his conviction and sentence. Even if the Court assigned Petitioner a lower base offense level under § 2K2.1, his 77-month prison sentence – which was well below the 10-year maximum authorized under 18 U.S.C. §§ 922(g) and 924(a)(2) – was still lawful. Nor does Petitioner assert that either of his controlled substance convictions have been vacated. As such, Grounds One through Three are not cognizable under 28 U.S.C. § 2255.[3]

---

[3] In any event, Petitioner's challenge to his base offense level under U.S.S.G. § 2K2.1(a)(2) lacks merit. Petitioner indeed had two prior convictions for a "controlled substance offense": (1) his 2005 felony conviction in federal court for the possession of crack cocaine with intent to distribute, PSR at ¶ 51, and (2) his 2000 felony conviction in a Florida court for the sale or delivery of cocaine, PSR at ¶ 39. Both convictions were controlled substance offenses because they (1) were punishable by a term of imprisonment exceeding one year, and (2) prohibited the manufacture, import, export,

## B. Ground Four: Whether Counsel Failed to File a Requested Appeal

Petitioner also contends that counsel gave ineffective assistance by failing to file a requested appeal. (Civ. Doc. 1 at 8). After reviewing the allegations and the record, the Court ordered Petitioner's federal public defenders – Jeffrey Gedbaw and Lisa Call – to submit affidavits and any records related to the claim pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings. (Civ. Doc. 13). The Court also directed the prosecutor to do the same to the extent he had any relevant information. Each of the attorneys responded to the Court's order.

According to Ms. Call's affidavit (Civ. Doc. 15), her name appears on the docket only because she was the branch chief of the Jacksonville Division of the Federal Defender's Office. (Id. at ¶ 1). As the branch chief, she assigned Mr. Gedbaw to represent Petitioner and had no communication with Petitioner pertaining to the instant criminal case. (Id. at ¶¶ 2, 3). However, Ms. Call did represent Petitioner

---

distribution, or dispensing of a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute, or dispense. U.S.S.G. § 4B1.2(b); see also 28 U.S.C. § 994(h)(2)(B) (identifying a violation of 21 U.S.C. § 841 as a prior conviction that would support what the Guidelines call the career offender enhancement); United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014) (possession of cocaine with intent to sell, in violation of § 893.13(1)(a), Fla. Stat., is a controlled substance offense). The Court recognizes that the United States Supreme Court granted certiorari review to determine whether § 893.13(1)(a), Fla. Stat. is a "serious drug offense" under the Armed Career Criminal Act, Shular v. United States, No. 18–6662, but Smith remains controlling in the meantime.
  Nor did the Court "look beyond the authorized documents of a prior state conviction" to enhance the Guidelines range, as Petitioner alleges in Ground Two. (Civ. Doc. 1 at 5). Petitioner admitted the existence of both the aforementioned drug convictions during his change-of-plea colloquy (Crim. Doc. 40 at 20-23), and he did not object to the PSR's Guidelines calculation or the PSR's description of these convictions (see Crim. Doc. 41 at 6).

regarding a violation of the terms of supervised release in a different criminal case (No. 3:05-cr-59-J-32MCR). (Id. at ¶ 4). Ms. Call states that following revocation and sentencing in that case, Petitioner wanted to file a notice of appeal and she did so on May 5, 2014. (Id.). In addition, Ms. Call attached a copy of a letter sent by Mr. Gedbaw to Petitioner after the Court entered judgment in the instant criminal case. (Id. at ¶ 5; Civ. Doc. 15-1). "The letter is signed by Mr. Gedbaw and is maintained as part of [Petitioner's] file … at the Federal Public Defender's office. The letter states that Mr. Grice did not want to appeal the sentence." (Civ. Doc. 15 at ¶ 5; Civ. Doc. 15-1).

According to Mr. Gedbaw's affidavit, he was Petitioner's lead trial counsel in the instant criminal case. (Civ. Doc. 17 at ¶ 1). Mr. Gedbaw recognized Petitioner, but due to the passage of time, he "d[id] not have any independent recollection of this case beyond what is documented in the original case file" that he reviewed. (Id. at ¶ 3). As such, Mr. Gedbaw's affidavit is "based solely upon a review of the original case file that was created by the Office of the Federal Public Defender, as well as the general policies of the office during [his] period of employment in the Jacksonville branch office." (Id.). Mr. Gedbaw states as follows:

4. During my employment with the Federal Public Defender, our office had a standard form that was titled "Appeal Discussion Checklist." The checklist was placed in each case that was opened by the office. It was the policy within our office that the attorneys were to complete the checklist on each case that was assigned to them as certain events on the list occurred. For example, when reviewing a plea agreement, the attorneys were required to discuss appellate rights, as well as any waiver that may have been included in the plea agreement. Additionally, after a sentence was issued in a case, the attorneys were required to advise their clients of their right to appeal, and any deadline to file a notice of appeal. Finally, it was our policy to also send a post-sentence letter to all

clients reminding them of their right to appeal, and remind them of the specific date by which any appeal would be filed. It should be noted that these tasks described above were the minimum standards required by our office, but in my personal experience, I would discuss appellate rights with clients beyond the minimum standards required.

5. Upon completion of each required task as set forth in the preceding paragraph, the policy of the office was that the attorney was required to document the specific date on which the task was performed. I cannot speak for other attorneys in the office, but my general practice was to document the date the specific tasks were performed as soon as possible after the fact, and while the information was still fresh in my mind. Upon a review of the file provided to me, there was nothing contained in the file that would suggest I deviated from that standard practice in this specific case.

6. On the case of Mr. Grice, the records reflect that I reviewed the plea agreement and discussed any waiver of appellate rights with Mr. Grice on June 11, 2015. The file reflects that the Judgment and Commitment Order in this case was signed on December 18, 2015, which would mean that the due date for filing a Notice of Appeal would have been January 1, 2016. The notes documented on the checklist indicate that I discussed with Mr. Grice whether he wanted me to file a Notice of Appeal on December 23, 2015, and that our office sent him our standard closing letter on December 29, 2015, memorializing the fact that he had advised me he did not want to appeal the sentence he received on this case.

(Id. at ¶¶ 4-6). Mr. Gedbaw attached a copy of the Appeal Discussion Checklist as exhibit 1 (Civ. Doc. 17-1, Appeal Discussion Checklist), and a copy of the closing letter as exhibit 2 (Civ. Doc. 17-2, Closing Letter). Mr. Gedbaw continued:

8. In response to the specific questions the Court ordered be answered under oath in the Court's Order from March 4, 2019, the affiant states the following:

(a) The affiant does not recall the Petitioner, Mr. Leonard Grice, ever instructing counsel to appeal his conviction. Based on the documentation reviewed by the affiant, Mr. Grice advised counsel he did not wish to appeal his conviction.

(b) The affiant has no information indicating that Mr. Grice ever

> indicated an interest in appealing his conviction.
>
> (c) According to the appeal checklist, counsel discussed any appellate waiver with Mr. Grice on June 11, 2015, prior to Mr. Grice entering a guilty plea. Counsel further discussed with Mr. Grice his right to appeal on December 23, 2015, and sent a closing letter on December 29, 2015, in which counsel memorialized the fact that based on previous discussions, Mr. Grice did not wish to appeal his conviction.

(Civ. Doc. 17 at ¶ 8).

Consistent with Mr. Gedbaw's affidavit, the Appeal Discussion Checklist reflects that Mr. Gedbaw advised Petitioner about his appeal rights and the waiver of appeal on June 11, 2015, when Mr. Gedbaw reviewed the Plea Agreement with Petitioner. (Civ. Doc. 17-1). The checklist also reflects that on December 23, 2015, Mr. Gedbaw had a post-sentencing discussion with Petitioner about the right to appeal, and that on December 29, 2015, Mr. Gedbaw sent a post-sentencing letter to Petitioner regarding an appeal. (Id.). Mr. Gedbaw's closing letter to Petitioner, dated December 29, 2015, states as follows:

> Dear Mr. Grice:
>
> Enclosed is a copy of the *Judgment* in your case that was filed on December 2015. As discussed, you do *not* wish to appeal your sentence and I agree with your decision.
>
> All matters have now been completed that were covered under the Order of Appointment of this office in your case. My ability to represent you under this Order has ended. I can no longer represent you without further order of the court and the file in your case will be closed.
>
> If you have any specific questions about the case which I have not previously discussed with you, please do not hesitate to contact me.
>
> I wish you the best of luck.
>
> Sincerely,
>
> Jeffrey Gedbaw
> Assistant Federal Defender
> Enclosure

(Civ. Doc. 17-2).

According to the prosecutor's affidavit, his personal notes from the case appear to have been destroyed, but he was able to review some files that had been preserved. (Civ. Doc. 16 at ¶ 1 & n.1). The prosecutor "was able to locate one item of correspondence from the defendant to our office dated July 6, 2015. The letter was prior to sentencing, generally referenced cooperation and did not discuss an appeal." (Id. at ¶ 2). Otherwise, the prosecutor had no relevant information to offer.

Petitioner responded to the affidavits on April 24, 2019 (Civ. Doc. 18) and on August 6, 2019 (Civ. Doc. 21). In the first response, Petitioner states that the day after his sentencing hearing (or December 16, 2015), he called the Federal Public Defender's office to speak to Mr. Gedbaw and was told that Mr. Gedbaw was busy, but that Mr. Gedbaw would come out to see him in a couple of days. (Civ. Doc. 18 at 1). According to Petitioner, Mr. Gedbaw visited him at the Baker County Detention Center sometime after December 18, 2015 (when the judgment was entered). (Id.).[4] Petitioner

---

[4] Petitioner states that "[i]t's on record, the phone call I made after sentencing [and] me being pulled for an attorney/ client visit." (Civ. Doc. 18 at 1-2). Petitioner asserts that with the assistance of counsel, he could obtain these records from the Baker County Detention Center. (Id. at 2). But Petitioner does not assert that the call log or the visitor's log, in and of themselves, would corroborate his allegation that he instructed Mr. Gedbaw to file an appeal. Indeed, unless the Baker County Detention Center recorded the attorney-client meeting between himself and Mr. Gedbaw and maintained that recording (which Petitioner does not allege), the Baker County Detention Center would not have a record of Petitioner instructing counsel to file a notice of appeal.

The Court assumes as true that Petitioner called to speak with Mr. Gedbaw and that Petitioner and Mr. Gedbaw had an attorney-client meeting at the Baker County Detention Center. Because this is the extent of what the detention center's records would have shown, and the Court assumes their truth, it is not necessary to appoint counsel for Petitioner to obtain the detention center's records.

insists that during the meeting, he "instructed Mr. Gedbaw to appeal my case." (Id.). Petitioner also asserted that "there is nothing coming from Mr. Gedbaw stating that I did not ask to appeal my case." (Id. at 2). Responding to the government's argument that the nine-month delay in filing the § 2255 Motion undermines his allegations, Petitioner states that "once I was in the system it took me months to get help with my legal work" and that he had difficulty conducting research for the motion. (Id.).

Based on the first response, the Court was uncertain whether Petitioner had received Mr. Gedbaw's affidavit and the enclosed exhibits. So, on its own initiative, the Court mailed the documents to Petitioner and gave him a second opportunity to respond. (Civ. Doc. 20). In his second response, Petitioner reasserts that he "personally conveyed a request to my 'public defender' to file an appeal on my sentence." (Civ. Doc. 21 at 1). Petitioner also alleges, for the first time, that his "public defender conveyed that my appeal would be properly filed on time within the one year limatation [sic] under the rules of exception." (Id.). Petitioner does not elaborate on what he means by this, considering he had 14 days to file a notice of appeal, not one year. Petitioner did not provide any supporting documentation with his responses. Notably, Petitioner does not address Mr. Gedbaw's closing letter (Civ. Doc. 15-1 / Civ. Doc. 17-2) or the Appeal Discussion Checklist (Civ. Doc. 17-1) in either response. Petitioner also does not deny the authenticity of the closing letter, nor does he deny having received it on or around December 29, 2015, when Mr. Gedbaw mailed it to him.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is

professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969)).

> This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

Id. "[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriguez, 395 U.S. at 329-30). But "[a]t the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Flores-Ortega, 528 U.S. at 477 (emphasis in original) (citing Jones v. Barnes, 463 U.S. 745, 751 (1983)).

"[B]etween those poles" is the situation "when the defendant has not clearly conveyed his wishes one way or the other." Id. In that scenario, the first question is whether counsel consulted the defendant about an appeal, and if so, whether counsel followed the defendant's wishes. Id. at 478. If counsel did not consult the defendant, "the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance" under the circumstances. Id.

This case is not one of the "in between" cases. Petitioner does not allege that counsel failed to adequately consult him about an appeal. Petitioner alleges simply that he instructed counsel to file a notice of appeal and that counsel failed to do so.

15

(Civ. Doc. 1 at 8; Civ. Doc. 18; Civ. Doc. 21). As such, this case does not require an inquiry into whether counsel had a duty to consult under Flores-Ortega (although the record reflects that counsel fulfilled the duty to consult anyway). Instead, this case turns on whether Petitioner in fact instructed counsel to file a notice of appeal.

Here, the affidavits and records on file refute Petitioner's allegation that he directed counsel to file an appeal. The record reflects just the opposite: that Mr. Gedbaw consulted Petitioner about an appeal and Petitioner instructed Mr. Gedbaw not to pursue one. (Civ. Docs. 15-1, 17, 17-1, 17-2).

Petitioner disputes this version of events. "Ordinarily, contested factual issues in a § 2255 proceeding may not be determined based only on affidavits." Alvarez-Sanchez v. United States, 350 F. App'x 421, 423 (11th Cir. 2009) (emphasis added). However, "[w]here the affidavits are supported by other evidence in the record the court may rely upon them." Owens v. United States, 551 F.2d 1053, 1054 (5th Cir. 1977).[5] Here, other evidence in the record corroborates Mr. Gedbaw's statement that he does not recall Petitioner instructing him to pursue an appeal or indicating an interest in doing so. Two records from the Federal Public Defender's Office, on which Mr. Gedbaw based his affidavit, reflect that Petitioner instructed Mr. Gedbaw not to file a notice of appeal. The Appeal Discussion Checklist, which Mr. Gedbaw created and contemporaneously updated, indicates that on December 23, 2015, he discussed with Petitioner whether to pursue an appeal, and that on December 29, 2015, Mr.

---

[5] Decisions issued by the former Fifth Circuit Court of Appeals before the close of business on September 30, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

16

Gedbaw sent Petitioner a "post-sentence" "letter explaining appeal/ cross-appeal rights & time." (Civ. Doc. 17-1). Next to the line stating "If client decides to appeal/ cross-appeal, date we received notice," the Checklist states "N/A," reflecting that Petitioner did not instruct counsel to file an appeal. (Id.). Additionally, Mr. Gedbaw's closing letter to Petitioner, dated December 29, 2015, states in pertinent part: "Enclosed is a copy of the Judgment in your case that was filed on December 18, 2015. As discussed, you do *not* wish to appeal your sentence and I agree with your decision." (Civ. Doc. 17-2) (emphases in original). The letter goes on to inform Petitioner that the Federal Public Defender's representation in the case had come to an end. (Id.).

Petitioner does not deny receiving the closing letter or dispute its authenticity. In the closing letter, Mr. Gedbaw invited Petitioner to contact him if he "h[ad] any specific questions about the case." (Id.). If the closing letter did not accurately reflect Petitioner's wishes about an appeal, it would be reasonable to expect that Petitioner would have contacted Mr. Gedbaw to correct the mistake. But the record contains no indication that Petitioner made any effort to follow up with Mr. Gedbaw about the closing letter or about pursuing an appeal. According to Petitioner himself, he did not contact the Federal Public Defender's Office again until several months later, after filing the § 2255 Motion, when he sought the office's help in obtaining records from the Baker County Detention Center. (Civ. Doc. 18 at 2).

Moreover, while not conclusive by themselves, the surrounding circumstances only further indicate that Petitioner did not wish to pursue an appeal. First, Petitioner pled guilty to the charge in the Indictment, which "reduces the scope of potentially

appealable issues" and "indicate[s] that the defendant s[ought] an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. Second, and significantly, Petitioner waived the right to appeal his sentence as part of the Plea Agreement. Although the waiver would not have relieved counsel of the obligation to file a notice of appeal if Petitioner had instructed him to do so, Garza v. Idaho, 139 S. Ct. 738, 746 (2019), the waiver is some evidence that Petitioner did not wish to pursue an appeal. Third, near the end of the sentencing hearing, when the Court advised Petitioner he had 14 days in which to file a notice of appeal and that "[f]ailure to appeal within that 14-day period would be a waiver of your right to appeal," Petitioner voiced no interest in doing so. (Crim. Doc. 41 at 22). Indeed, right after the Court advised Petitioner of the 14-day appeal period, the Court asked if either party had any objection to the sentence and Petitioner voiced none. (Id.). Finally, Petitioner received exactly the sentence that both his attorney and the United States recommended: 77 months in prison, which represented the low end of the Guidelines range. See Flores-Ortega, 528 U.S. at 480 (in determining whether a rational defendant would have wanted to appeal, a court should consider whether the defendant received the sentence he bargained for). All of these circumstances suggest that Petitioner did not wish to appeal his sentence. Combined with the affidavits and records submitted to the Court, the record affirmatively contradicts Petitioner's claim that he instructed counsel to pursue an appeal.

"[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed

deficiently." Flores-Ortega, 528 U.S. at 477 (emphasis in original) (citing Jones, 463 U.S. at 751). Petitioner is entitled to neither an evidentiary hearing nor relief. Ground Four is due to be denied.

## IV. Conclusion

Having considered each of Petitioner's claims for relief, and finding that none warrants relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1. Petitioner Leonard Grice's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Petitioner's Motion to Appoint Counsel (Civ. Doc. 9) is **DENIED**.

3. Petitioner's Motion to Expedite (Civ. Doc. 12) is **GRANTED** insofar as Petitioner requests resolution of his § 2255 Motion.

4. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of August, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Lc 19
C:
Counsel of record
Pro se petitioner